# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| RICK MYERS | CASE NO. 00-53489EE |
| TINA MYERS | |
| d/b/a P & L PROPERTIES | |
| d/b/a EXPRESS PERSONNEL | |
| | |
| KIMBERLY R. LENTZ, TRUSTEE | |
| | |
| VS. | ADVERSARY NO. 10-05014EE |
| | |
| RICK MYERS AND TINA MYERS, | |
| D/B/A EXPRESS PERSONNEL, | |
| D/B/A P & L PROPERTIES, | |
| INFINITY SERVICES OF MISSISSIPPI, INC., | |
| LIBERTY MUTUAL INSURANCE COMPANY, | |
| FOX EVERETT UNDERWRITERS, LTD. AND | |
| STEVE LEE | |

Hon. Derek A. Henderson                                                    Attorneys for Debtors
111 East Capitol Street, Suite 455
Jackson, MS  39201

Hon. Robert Gambrell
101 Ricky D. Britt Blvd., Suite 3
Oxford, MS 38655

Hon. Michael T. Jaques
240 Trace Colony
Ridgeland, MS  39157

Hon. Kimberly R. Lentz                                                       Chapter 7 Trustee
Post Office Box 927
Gulfport,  MS 39502

Hon. William J. Little, Jr.                                                Attorney for Chapter 7 Trustee
Post Office Box 927
Gulfport,  MS 39502

| | |
|---|---|
| Hon. Robert Alan Byrd<br>Post Office Box 1939<br>Biloxi, MS  39533 | Attorneys for Liberty Mutual Insurance Co., |
| Hon. Clifford K (Ford) Bailey, III<br>Hon. Kelly D. Simpkins<br>300 Concourse Boulevard, Suite 200<br>Ridgeland, MS  39157 | |
| Hon. Edward J. Currie, Jr.<br>Post Office Box 750<br>Jackson, MS  39205-0750 | Attorneys for Fox-Everett Underwriters, LTD.<br>and Steve Lee |
| Hon. Thomas E. Schwab<br>1515 Poydras Street, Suite 2350<br>New Orleans, LA  70112 | |

Edward Ellington, Judge

## MEMORANDUM OPINION ON THE
## *DEFENDANTS RICK MYERS AND TINA MYERS D/B/A*
## *EXPRESS PERSONNEL, D/B/A P & L PROPERTIES AND INFINITY*
## *SERVICES OF MISSISSIPPI, INC.'S MOTION FOR SUMMARY JUDGMENT*

**THIS MATTER** came before the Court on the *Defendants Rick Myers and Tina Myers d/b/a Express Personnel, d/b/a P & L Properties and Infinity Services of Mississippi, Inc.'s Motion for Summary Judgment* (#36), *Liberty Mutual Insurance Company, Fox-Everett Underwriters, Ltd. and Steve Lee's Memorandum Brief in Support of their Opposition to Debtors' Motion for Summary Judgment* (#46), and *Joinder in Liberty Mutual Insurance Company, Fox-Everett Underwriters, Ltd. and Steve Lee's Memorandum Brief in Support of their Opposition to Debtors' Motion for Summary Judgment* (#47) filed by the Chapter 7 Trustee, Kimberly R. Lentz. After considering the same, the Court finds that the *Defendants Rick Myers and Tina Myers d/b/a Express Personnel, d/b/a P & L Properties and Infinity Services of Mississippi, Inc.'s Motion for*

2

*Summary Judgment* is not well taken and should be denied.

## FACTS

The following recitation of facts is from the *In re Myers,* 425 B.R. 296 (Bankr. S.D. Miss. 2010), opinion this Court entered in the Myers' bankruptcy case in which the Court denied motions to settle. While all of the facts are not pertinent to the motion currently before the Court, it details what has occurred in this case:

> The matter currently before the Court is one in a long line of matters litigated between Rick and Tina Myers (Debtors), Liberty Mutual Insurance Company, Fox-Everett Underwriters, LTD., Steve Lee and the Chapter 7 Trustee, Kimberly R. Lentz (Trustee). In order to put the issues before the Court in context, it is necessary to give a rather detailed background of what has occurred between the parties up to this time.
>
> On August 17, 2000, the Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code styled *Rick and Tina Myers dba P & L Properties dba Express Personnel* in the Gulfport Divisional Office of the Southern District of Mississippi. The case was assigned to the Honorable Edward R. Gaines. P & L Properties (P&L) was a limited liability corporation wholly owned by Rick Myers. P&L provided temporary employees to businesses and operated through a franchise with Express Services, Inc. On March 2, 2001, the Debtors converted their case to one under Chapter 7 of the United States Bankruptcy Code.
>
> On October 25, 2001, an *Order Approving Trustee's Report of No Distribution* was entered in which the Chapter 7 Trustee, C. Thomas Anderson, certified that there were no assets to administer for the benefit of the creditors of the estate.[1] The Debtors received their *Discharge of Debtor* also on October 25, 2001, and their case was closed on October 29, 2001.
>
> On October 21, 2002, the Debtor, Rick Myers, and Infinity Services of Mississippi, LLC (collectively, Myers) filed a complaint against Liberty Mutual Insurance Company, Fox-Everett Underwriters, Ltd., and Steve Lee (collectively, Liberty Mutual) in the Circuit Court of the First Judicial District of Hinds County, Mississippi (State Court Litigation). Infinity Services of Mississippi, LLC (Infinity) was a limited liability company established by Rick Myers on or around March 30,

---

[1] C. Thomas Anderson was appointed the Chapter 7 Trustee in 2001 when the Debtors converted their case from a Chapter 13 to a Chapter 7. When the case was reopened in 2004, Kimberly R. Lentz was appointed the Chapter 7 Trustee.

3

2001. Infinity was a labor subcontracting company which supplied skilled labor to industrial and marine contractors both inside and outside of Mississippi. In the lawsuit, Myers basically contends that Liberty Mutual failed to procure and to provide Infinity with workers' compensation insurance coverage and that Myers relied upon false representations made by Steve Lee and Fox-Everett during the solicitation and sale of the policy for workers' compensation insurance. As a result of the actions of Liberty Mutual, Myers alleges that Infinity eventually went out of business. Myers asserts various causes of action, including breach of contract, gross negligence, breach of duty of good faith and fair dealing, and emotional distress along with several other counts.

On May 25, 2004, Liberty Mutual removed the State Court Litigation to the United States District Court for the Southern District of Mississippi[2] alleging that the causes of action were property of the Myers' bankruptcy estate (District Court Action). In support of its contention that the District Court Action is property of the Debtors' bankruptcy estate, Liberty Mutual asserts that in late 2000, Myers requested that Steve Lee, an agent for Fox-Everett, assist him in procuring a workers' compensation policy to cover workers subject to the U. S. Longshore & Harbor Workers' Compensation Act.[3] Mr. Lee obtained coverage for Myers through the Mississippi Workers' Compensation Assigned Risk Plan. The assigned risk plan was administered by Compensation Insurance Services (CIS). Once CIS approved P & L's application, it assigned Liberty Mutual Insurance Company as the plan's servicing carrier for the policy.

According to Liberty Mutual, as the servicing carrier, Liberty Mutual "issued and administered the policy and any claims arising thereunder in accordance with the guidelines of the plan and the National Council on Compensation Insurance ("NCCI")....Liberty subsequently issued its policy...to P & L for the policy period of 12/16/00-12/16/01. . . .Mississippi was the only state listed in the USL&H endorsement."[4]

Liberty Mutual alleges that in January of 2001, Myers began "surreptitiously transferring P&L's cash, accounts receivable, business contacts and other assets to Infinity Services and thereby depriving his creditors of the only realistic chance they had of recovering at least some portion of their claims against Myers *(sic)* bankruptcy estate. . . .In the midst of these transactions, on March 2, 2001, he converted his

---

[2]The case was assigned Civil Action No. 3:04-cv-392-HTW-JCS.

[3]33 U. S. C. § 901, et. seq.

[4]*Joint Memorandum of Defendants Liberty Mutual Insurance Company, Fox-Everett Underwriters, LTD. and Steve Lee in Opposition to Trustee's Motion to Compromise and in Support of Defendants' Alternative Proposal*, p. 3 (October 21, 2009).

4

bankruptcy to a Chapter 7." *Id*. at p. 4. In light of the actions of Myers, Liberty Mutual asserts that the Debtors' conversion to a Chapter 7 was in bad faith, that Infinity is a successor in interest of P &L, and therefore, the District Court Action is property of the Debtors' bankruptcy estate.

The Debtors filed a motion to reopen their Chapter 7 bankruptcy case on September 23, 2004. On October 1, 2004, an order was entered reopening their case. Kimberly R. Lentz was appointed the Chapter 7 Trustee.

On March 22, 2005, Judge Henry T. Wingate entered an order in the District Court Action denying Myers' motion to remand. In denying the motion to remand, Judge Wingate addressed the issue of whether the lawsuit was property of the Debtors' bankruptcy estate. Judge Wingate stated that "this court is convinced at this stage that defendants have produced enough proof to show that Myers' claims in the lawsuit *sub judice* arose prior to and during Myers' bankruptcy proceedings."[5] Based on the same reasoning, Judge Wingate also denied Myers' motion to abstain on March 24, 2005.

The District Court Action remains pending before Judge Wingate; however, on October 6, 2005, all discovery was stayed in the District Court Action pending resolution in this Court of the issue of whether the cause of action is property of the Debtors' bankruptcy estate.

Liberty Mutual has filed two proof of claims in the Debtors' bankruptcy case. On May 2, 2005, Liberty Mutual filed a claim in the amount of $977,753.46 (claim #1). The stated basis for this claim is "assigned risk premium." On April 23, 2007, Liberty filed a second proof of claim in the amount of $977,798.46 (claim #24). The stated basis for this claim is "money loaned."

At some point after the bankruptcy case was reopened, the Trustee reached an agreement with Liberty Mutual to settle the District Court Action. On May 4, 2005, the Trustee filed *Trustee's Motion for Authority to Compromise* (Liberty Mutual Settlement). The Liberty Mutual Settlement entailed Liberty Mutual paying the Trustee $60,000 in exchange for the Trustee dismissing the District Court Action. However, this settlement was contingent upon a finding that the Debtors converted their Chapter 13 case in bad faith. The Debtors objected to this settlement.[6] Subsequently on August 25, 2006, the Trustee filed an adversary proceeding

---

[5]Wingate, J. *Infinity Services of Miss., LLC and Rick Myers vs. Liberty Mutual Insurance Co., et. al.,* Case No. 3:04cv392-HTW-JCS, *Order*, p. 6, March 21, 2005.

[6]As noted later in the *Finding of Facts*, the Liberty Mutual Settlement was withdrawn by an *Agreed Order* on September 11, 2009.

5

(Trustee's Adversary Proceeding) against the Debtors.[7] The complaint contains two counts. In Count I, the Trustee prayed for a monetary judgment against the Debtors for the $20,000 the Debtors received shortly after the conversion of their case to a Chapter 7 for the sale of a franchise agreement. The Trustee alleged that on *Schedule B - Personal Property*, the Debtors listed the value of P&L and the franchise of Express Personnel Services as zero. However, less than two weeks after the Debtors converted their case to a Chapter 7, the Debtors received $20,000 for the sale of the Express Services franchise back to Express Services. In Count II the Trustee alleged that Infinity was a mere continuation of the business of P&L...Infinity had the exact same employees, same address and phone numbers and the same insurance coverage as P&L. The Trustee sought a declaratory judgment that Infinity was the successor in interest of P&L, and therefore, all of the assets of Infinity were property of the Debtors' bankruptcy estate.

On May 30, 2007, Judge Gaines recused himself from hearing the Trustee's Adversary. Thereafter, the Trustee's Adversary Proceeding was transferred to the Jackson Divisional Office of the Southern District of Mississippi. The Trustee's Adversary Proceeding was assigned to the undersigned judge.

The Trustee and the Debtors agreed to settle the Trustee's Adversary Proceeding, and on August 22, 2007, the Trustee filed *Motion to Approve Compromise* (Debtors' Adversary Settlement). In the Debtors' Adversary Settlement, the basic terms are that the Debtors agreed to pay the Trustee a sum of $20,000 and that the Trustee agreed to dismiss Count I and II of the adversary proceeding and to withdraw the Liberty Mutual Settlement. Liberty Mutual objected to the Debtors' Adversary Settlement and stated that it was willing to purchase from the Trustee the causes of action against the Debtors.

The Debtors' Adversary Settlement was cross-indexed from the adversary and into the Debtors' bankruptcy file. On October 29, 2007, Judge Gaines also recused himself from hearing the matters in the main bankruptcy case. The main bankruptcy case was assigned to the undersigned judge. At that point, the Debtors' main bankruptcy case and related adversary proceedings were all pending before this Court.

On March 17, 2008, a *Consent Judgment*[8] was entered in the Trustee's Adversary Proceeding in which the Trustee agreed to dismiss Count I of the complaint. The judgment further held that Count II was dismissed but that no adjudication was being

---

[7]Styled: *Kimberly R. Lentz, Trustee for the Bankruptcy Estate of Rick Myers and Tina Myers d/b/a P & L Properties d/b/a Express Personnel v. Rick and Tina Myers;* Adversary No. 06-5064.

[8]A *Corrected Consent Judgment* was entered on October 23, 2008, to correct the docket number for the Liberty Mutual Settlement listed in the order–from #89 to #79.

made as to whether Infinity Services, LLC is property of the Debtors' bankruptcy estate.[9]

The Court set January 15, 2009, as the date of the trial on the Liberty Mutual Settlement. At the pretrial conference, the parties agreed to mediation before the Honorable David W. Houston, III, United States Bankruptcy Judge for the Northern District of Mississippi. The mediation did not result in the parties reaching a global settlement of all of the pending matters. However, Myers and the Trustee reached an agreement to resolve the dispute over whether the causes of action in the District Court Action were property of the Debtors' bankruptcy estate.

. . . .

A trial on the Myers' Settlement and the Liberty Mutual Counter-Offer was held on August 12, 2009. At the conclusion of the trial, the Court took the matter under advisement and instructed the parties to submit briefs supporting their respective positions.

On September 11, 2009, the parties entered into an *Agreed Order* in which the Trustee withdrew the Liberty Mutual Settlement. Therefore, the only settlement offers currently pending in this case is the Myers' Settlement and the Liberty Mutual Counter-Offer, both of which are the subject of this opinion.[10]

The Court did not approve either the Myers' Settlement or the Liberty Mutual Counter-Offer. The Court found that the Myers' Settlement was not fair or equitable and was not in the best interests of the bankruptcy estate. The Court found the Liberty Mutual Counter-Offer was contingent and was not in the best interests of the bankruptcy estate. In the last paragraph of its opinion, the Court stated "that it is time for the Trustee to take the appropriate action to move the case forward and to have the bad faith conversion/property of the estate issues finally determined."[11]

Heeding the Court's instructions, the Trustee initiated the above-styled adversary proceeding

---

[9] The Debtors' Adversary Settlement contemplated the Debtors paying the Trustee $20,000 in exchange for the settlement of the adversary. The Trustee did receive a payment from the Debtors in the amount of $20,000, however, neither *Consent Judgment* mentions the $20,000 payment.

[10] *In re Myers,* 425 B.R. 296, 298-303 (Bankr. S.D. Miss. 2010).

[11] *Id.* at 309.

on April 6, 2010, with the filing of her *Complaint for Declaratory Judgment* (Complaint). In Count I of the Complaint, the Trustee seeks an adjudication by the Court of whether the causes of action in the District Court Action are property of the Debtors' bankruptcy estate. In Count II of the Complaint, the Trustee seeks a determination of whether Infinity is a successor in interest to the Debtors and Express Personnel d/b/a P & L Properties. The Trustee asserts that if Infinity is a successor in interest, then the Trustee "has control and ownership of any causes of action set forth in the [District Court Action] which are property of Infinity Services, LLC."[12]

Responses to the Complaint were filed by Liberty Mutual, the Debtors and Infinity. In addition, the Debtors and Infinity also filed motions to dismiss the complaint. The Court set the motions to dismiss for trial on March 11, 2011. After the parties presented their respective positions to the Court, the Court ruled from the bench and denied the motions to dismiss. On March 14, 2011, the Court entered a *Final Judgment Denying the Motions to Dismiss*. Also on March 14, 2011, the Court entered a *Scheduling Order* on the Complaint and the various answers.

On June 14, 2011, *Defendants Rick Myers and Tina Myers d/b/a Express Personnel, d/b/a P & L Properties and Infinity Services of Mississippi, Inc.'s*[13] *Motion for Summary Judgment* (Motion) was filed. In its Motion, the Debtors state that they are entitled to a judgment as a matter of law as to Count I of the Complaint. The Debtors assert that the causes of action in the District Court Action are not property of the bankruptcy estate because the causes of action did not accrue until Liberty Mutual denied the claims in April of 2002. Since the causes of action did not exist until after the Myers received their discharge and their bankruptcy case was closed, the Debtors assert that

---

[12]*Complaint for Declaratory Judgment*, Adversary No. 10-05014EE, Docket No #1, ¶ 20.

[13]Hereinafter, for purposes of this opinion, the term *Debtors* will be used to collectively refer to Rick and Tina Myers d/b/a Express Personnel d/b/a P & L Properties and Infinity Services of Mississippi.

8

the District Court Action is not property of the bankruptcy estate and that the issue of whether the Myers converted in bad faith is moot.

On July 25, 2011, Liberty Mutual filed *Liberty Mutual Insurance Company, Fox-Everett Underwriters, Ltd. and Steve Lee's Memorandum Brief in Support of their Opposition to Debtors' Motion for Summary Judgment* (Response). The Trustee filed her *Joinder in Liberty Mutual Insurance Company, Fox-Everett Underwriters, Ltd. and Steve Lee's Memorandum Brief in Support of their Opposition to Debtors' Motion for Summary Judgment* (Joinder) on July 26, 2011. Both Liberty Mutual and the Trustee assert (what this Court itself has recognized on several occasions) that the Honorable Henry T. Wingate adjudicated that the causes of action accrued prior to the Debtor's conversion to a Chapter 7 case in the District Court Action. Therefore, Liberty Mutual and the Trustee state that summary judgment should be denied and that they should be awarded attorney's fees for having to respond to the Motion.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (O).

### II. Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure,[14] as amended effective December 1, 2010,[15]

---

[14] Federal Rule of Civil Procedure 56 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

[15] The Notes of Advisory Committee to the 2010 amendments state that the standard for granting a motion for summary judgment has not changed, that is, there must be no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Further, "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases."

9

provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, "the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. 2505, 2510 (1986)." *Newton v. Bank of America (In re Greene),* 2011 WL 864971, *4 (Bankr. E.D. Tenn. March 11, 2011).

"The moving party bears the burden of showing the . . . court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)." *Hart v. Hairston,* 343 F. 3d 762, 764 (5th Cir. 2003).

Once a motion for summary judgment is pled and properly supported, the burden shifts to the non-moving party to prove that there are genuine disputes as to material facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials."[16] Or the non-moving party may "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute."[17] When proving that there are genuine disputes as to material facts, the non-moving party cannot rely "solely on allegations or denials contained in the pleadings or 'mere scintilla of evidence in support of the nonmoving party will not be sufficient.' *Nye v. CSX Transp., Inc.,* 437 F. 3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986)." *Newton,* 2011 WL 864971 at *4. "[T]he nonmovant

---

[16]Fed. R. Bankr. P. 7056(c)(1)(A).

[17]Fed. R. Bankr. P. 7056(c)(1)(B).

10

must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action." *Malacara v. Garber,* 353 F. 3d 393, 404 (5th Cir. 2003). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 106 S.Ct at 1356 (citations omitted).

When considering a motion for summary judgment, the court must view the pleadings and evidentiary material, and the reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party, and the motion should be granted only where there is no genuine issue of material fact. *Thatcher v. Brennan*, 657 F. Supp. 6, 7 (S.D. Miss. 1986), *aff'd*, 816 F.2d 675 (5th Cir. 1987)(citing *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1070-71 (5th Cir. 1984)); *see also Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538, 553 (1986). The court must decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).

### III. Analysis of Motion for Summary Judgment

As stated above, the Debtors assert that they are entitled to a judgment as a matter of law because the causes of action in the District Court Action did not accrue until after the Myers had received their discharge and after their bankruptcy case had been closed. Liberty Mutual and the Trustee assert that this question was settled by the Honorable Henry T. Wingate in the District Court Action.

In his *Order* denying a motion to abstain, the Honorable Henry T. Wingate held:

If [Debtors] committed fraud, their cause of action would be property of the bankruptcy estate, because the cause of action accrued prior to the conversion of the bankruptcy from Chapter 13 to Chapter 7. "Property" of an estate includes causes

11

of action. *Wischan v. Adler,* 77 F. 3d 875, 877 (5th Cir. 1996). Title 11 U.S.C. § 348(f)(2) provides that "[i]f the debtor converts a case under chapter 13 of this title to a case under another chapter in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion." *See In re Lindberg,* 735 F. 2d 1087 (8th Cir. 1984). Mississippi courts have held that a cause of action based on a false representation, such as the claims at issue here, "accrues upon the completion of the sale induced by such false representation or upon the consummation of the fraud." *Black v. Kerry Canada, Inc.,* 791 F. Supp. 1120, 1123 (S.D. Miss. 1990); *FDIC v. Belli,* 981 F. 2d 838, 840 (5th Cir. 1993) (cause of action accrues when it comes into existence, not when it is discovered). The first policy was issued in December of 2000 while the bankruptcy was open, and prior to conversion. Accordingly, this court finds that the cause of action is core since: (1) **the cause of action accrued prior to the conversion**, (2) it is property of the bankruptcy estates if the conversion was fraudulent, and (3) it effects the liquidation of the assets of the bankruptcy estate.

Wingate, J. *Infinity Services of Miss., LLC and Rick Myers vs. Liberty Mutual Insurance Co., et. al.,* Case No. 3:04cv392-HTW-JCS, *Order*, Docket No. 55, pp. 6-7, March 24, 2005. (emphasis added).

### a. Law of the Case Doctrine

Liberty Mutual and the Trustee assert that this Court is bound by Judge Wingate's finding that the causes of action accrued prior to the conversion because of the *law of the case* doctrine. The *law of the case* doctrine was explained by the Court of Appeals for the Fifth Circuit in *White v. Murtha,* 377 F. 2d 428 (5th Cir. 1967) as follows:

> [A] decision of a legal issue or issues by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.

*Id.* at 431-32 (footnotes omitted).

In *Cajun Electric Members Committee v. Mabey (In re Cajun Electric Power Co-op, Inc.),* 230 B.R. 693 (Bankr. M.D. La. 1999), the trustee took the position that the district court had previously ruled on the assumption and assignment of contracts, and therefore, the *law of the case* doctrine bound the bankruptcy court to follow the holding of the district court. In declining to apply

12

the *law of the case* doctrine, the bankruptcy court found that "those issues were not presented to either the District Court or to the Fifth Circuit for decision." *Id.* at 703.

Upon a review of the docket of the District Court Action pending before Judge Wingate, Liberty Mutual removed the matter to district court from state court. The Debtors filed a motion to remand and/or for abstention. The Debtors also filed a corresponding brief in support of their motion to remand/abstain. Liberty Mutual filed a response in opposition and a corresponding brief. According to the July 8, 2004, minute entry,[18] Judge Wingate held a forty-minute hearing on the motion to remand/abstention on July 6, 2004. Subsequently, on March 21, 2005, Judge Wingate signed the opinion denying the motion to remand. Also on March 21, 2005, Judge Wingate signed the opinion denying the motion to abstain. Therefore, unlike the situation before the court in the *Cajun Electric* case, the question of whether the causes of action accrued prior to the Myers' conversion was presented to and argued before Judge Wingate. Judge Wingate subsequently ruled that the causes of action accrued prior to the Myers' conversion.

Consequently, in the absence of an exception to *law of the case* doctrine, the Court finds that the *law of the case* doctrine is applicable. Since none of the exceptions to the *law of the case* doctrine apply to the facts of this case, this Court is bound by Judge Wingate's ruling that the causes of action in the District Court Action accrued prior to the Myers' conversion to a Chapter 7.

In the recent unpublished opinion of *Hardy Rawls Enterprises, L.L.C. v. Cage (In re Moye)*, No. 10-20813, 2011 WL 3585955 (5th Cir. Aug. 16, 2011), the Fifth Circuit again addressed the *law of the case* doctrine. In *Moye*, the bankruptcy court found that a creditor did not have a perfected security interest in vehicles. The bankruptcy court later found that the *law of the case* doctrine

---

[18]Wingate, J. *Infinity Services of Miss., LLC and Rick Myers vs. Liberty Mutual Insurance Co., et. al.,* Case No. 3:04cv392-HTW, Docket Number 18, July 8, 2004.

13

prohibited the creditor from re-litigating the issue of perfection in the context of the trustee's objection to the creditor's proof of claim. The district court affirmed. The Fifth Circuit held that the bankruptcy court correctly applied the *law of the case* doctrine: "Under the law-of-the-case doctrine, a court follows its prior final decisions in the case as the law of that case, except for a few narrow exceptions. The doctrine encompasses those decisions decided by necessary implication as well as those decided explicitly."[19] The Fifth Circuit explained that the rule is "based on the salutary and sound public policy that litigation should come to an end."[20]

One of the grounds used to support this Court's denial of the Debtors' motions to dismiss the above-styled adversary proceeding was Judge Wingate's *Order* denying the motion to abstain. The Court held that since Judge Wingate had found that the District Court Action was a core proceeding because (1) the cause of action accrued prior to the conversion; (2) that if the conversion was fraudulent, the cause of action was property of the estate; and (3) that the cause of action affects the liquidation of the bankruptcy estate, then the Debtors' motion to dismiss pursuant to Federal Rule of Bankruptcy Procedure Rule 7012(b)(1) was not well taken.[21] The adoption by this Court of Judge Wingate's findings becomes the *law of the case* in the Myers' bankruptcy case. Consequently, the finding that the causes of action in the District Court Action accrued prior to the Myers' conversion from a Chapter 13 to a Chapter 7 is the *law of the case* in this bankruptcy proceeding. The Debtors cannot have another "bite at this apple" via their Motion.

---

[19] *In re Moye,* 2011 WL 3585955 at *3 (citations omitted).

[20] *Id.*

[21] *Liberty Mutual Insurance Company, Fox-Everett Underwriters, Ltd. and Steve Lee's Memorandum Brief in Support of their Opposition to Debtors' Motion for Summary Judgment*, Docket No #46, Exhibit 4 (Transcript of Ruling on March 11, 2011), p. 3.

14

### b. Doctrine of Stare Decisis

The Court finds that the related doctrine of *stare decisis* is also applicable to the case at bar.

> Stare decisis is the doctrine by which courts adhere to previous decisions and refrain from disturbing settled issues. It simply means to abide by or adhere to decided cases. The stare decisis principle has long been a cornerstone of the common law and stems from the maxim "stare decisis et non quieta movere" which means, "let stand what is decided, and do not disturb what is settled."
>
> Although there is no law codifying the doctrine of stare decisis, nor is there any penalty for not applying the doctrine, judges usually follow the decisions of higher courts because they know they will be reversed if they do not, . . . .[22]

This Court has always applied the *stare decisis* doctrine, and the Court sees no justification for not doing so in the case at bar. Judge Wingate's opinions are well-reasoned and well-taken by this Court. Therefore, the causes of action in the District Court Action accrued prior to the Myers' conversion to a Chapter 7, and the Court finds that the Debtors' Motion is not well taken and should be denied.

This Court is aware that some bankruptcy judges have opined that bankruptcy courts are *units* of the district courts and therefore are not inferior to district courts for *stare decisis* purposes. Consequently, these judges have held that the decisions of district courts are not binding on bankruptcy judges. *See In re Romano,* 350 B.R. 276 (Bankr. E.D. La. 2005). However, this Court finds the more reasoned approach to be that adopted by bankruptcy judges who have held that bankruptcy courts are inferior to district courts for *stare decisis* purposes. *See In re Jobs.com, Inc.,* 283 B.R. 209 (Bankr. N.D. Tex. 2002), *aff'd on other grounds*, 301 B.R. 187 (N.D. Tex. 2003), *aff'd,* 393 F. 3d 508, 516 (5th Cir. 2004) ("Fifth Circuit impliedly affirming, inter alia, that prior

---

[22]Philip White, Jr., *Precedential Effect of Bankruptcy Court, Bankruptcy Appellate Panel, or District Court Bankruptcy Case Decisions,* 8 A.L.R. Fed. 2d 155, § 2 (2006)

15

district court opinion binding on bankruptcy court."[23]).

## CONCLUSION

The Court agrees with the Debtors that there are no disputes over any material facts. However, the Court disagrees that a judgment should be granted in favor of the Debtors as a matter of law that the causes of action in the District Court Action are not property of the bankruptcy estate because they accrued after the Myers received their discharge and their case was closed. In his March 21, 2005, *Order* Judge Wingate clearly held that the causes of action accrued prior to the time the Myers converted their Chapter 13 to a Chapter 7; therefore, if the conversion is found to have been in bad faith, Judge Wingate further held that the causes of action would be property of the bankruptcy estate.

This case has involved numerous offers of settlement, discovery disputes, motions and adversaries. The Myers filed their bankruptcy petition in 2000. The Debtors filed their suit against Liberty Mutual in state court in 2002, which was ultimately removed to district court in 2004. The bankruptcy case was reopened in 2004. In March of 2005, Judge Wingate entered his ruling that the causes of actions accrued prior to the Myers' conversion to a Chapter 7. Now, in 2011, the Debtors have filed a frivolous motion for summary judgment in an attempt to have this Court overrule Judge Wingate's findings.

The request for attorney's fees by Liberty Mutual and the Trustee may be brought before the Court by either party at a later date.

As expressed by this Court in its ruling on the Debtors' motions to dismiss, it is time for the Debtors, Liberty Mutual and the Trustee to put their witnesses on the stand and try the issue: Did the Myers convert their Chapter 13 case to a Chapter 7 case in bad faith? In order to facilitate this

---

[23]*Id.* at § 14.

goal, the Court will set the adversary for trial by separate order.

A separate judgment consistent with this opinion will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

Edward Ellington
United States Bankruptcy Judge

Dated: September 1, 2011